UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH CORSETTI,                                  Case No. 10-12823

                                                  David M. Lawson
                  Plaintiff,                      United States District Judge
vs.

                                                  Michael Hluchaniuk
MARK A. HACKEL, SGT. CAMPAU,                      United States Magistrate Judge
SGT. SCHULTZ, SGT. B. KUTELL,
DEPUTY MASAKOWSKI, DEPUTY
MAZZARELLI, DEPUTY METRY,
DEPUTY FURNO, VALERIE WATKINS,
JAMES M. BIERNAT, MARGARET
DEMUYNCK, MICHELL M. SANBORN,
ONVIGBO, JASON MCTEVIA, ELIZABETH
CARVER, SGT. NEUMEYER, SGT. RICHARD,
ROBERT WROBLEWSKI,

                  Defendants.
_____/

**REPORT AND RECOMMENDATION
DEFENDANT ROBERT WROBLEWSKI'S
MOTION FOR SUMMARY JUDGMENT (Dkt. 165)
AND DEFENDANTS' MOTION TO DISMISS (Dkt. 172)**

## I.   PROCEDURAL HISTORY

Plaintiff makes a host of complaints against a multitude of defendants,

employees and agents of Macomb County and the City of Center Line, relating to

his arrest, detention at Center Line, and incarceration in the Macomb County Jail.

(Dkt. 1).  These claims include interference with legal mail, interference with

access to the courts, denial of due process during misconduct proceedings,

1

destruction of personal property, failure to provide medical care after food
poisoning, failure to provide medical devices (contact lenses) after they were
ordered by a physician, failure to follow other physician-prescribed measures,
failure to provide a proper grievance procedure, First Amendment retaliation,
improper confiscation of personal property, and inappropriate detention in a garage
without regard to his heart condition.  (*Id.*)  This matter was referred to the
undersigned for general case management on November 22, 2010.  (Dkt. 16).

On October 29, 2012, defendant Robert Wroblewski filed a motion for
summary judgment arguing primarily that plaintiff's allegations regarding the
conditions of his confinement at Center Line, even if taken as true, are insufficient
to sustain a claim for violation of plaintiff's constitutional rights.  (Dkt. 165).
Plaintiff filed a response to defendant Wroblewski's motion for summary judgment
on November 9, 2012.  (Dkt. 173).  Defendant Wroblewski filed a reply brief in
support of his motion on November 26, 2012 (Dkt. 179), and plaintiff filed a
"response" to defendant's reply brief on December 4, 2012.  (Dkt. 182).

On November 8, 2012, defendants Hackel, Kutell, Schulte, Furno,
Masakowski, Metry, Mazzarelli, Biernat, DeMuynck, Sanborn, McTevia, Carver,
Neumeyer and Richard filed a motion to dismiss, arguing that plaintiff's Complaint
failed to state a claim against defendants Hackel, Sanborn, Biernat, DeMuynck and
Kutell.  (Dkt. 172).  Plaintiff filed a response to that motion to dismiss on

November 16, 2012 (Dkt. 175), and defendants filed a reply brief in support of their motion on November 30, 2012.  (Dkt. 181).  These motions are now ready for consideration.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendant Wroblewski's motion for summary judgment be **GRANTED**, that defendants' motion to dismiss claims as to defendants Hackel, Sanborn, Biernat, DeMuynck and Kutell be **GRANTED**, and that plaintiff's Complaint against defendants Wroblewski, Hackel, Sanborn, Biernat, DeMuynck and Kutell be **DISMISSED** with prejudice.

## II.    STATEMENT OF FACTS

### A.    Plaintiff's Complaint

Plaintiff filed this Prisoner "Civil Rights Complaint" against a multitude of defendants, asserting violation of his constitutional rights under the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution. (Dkt. 1).  Plaintiff was arrested on December 20, 2009, following the robbery of Dollar Town in the city of Center Line, and detained at the Center Line Department of Public Safety.  Plaintiff alleges that following his arrest, he was locked in a garage at the Center Line police department and handcuffed to a steel bar on the wall, without his coat and with no heat, food or water, for six and a half hours. Plaintiff was eventually transported to the Macomb County Jail as a pretrial

detainee.  Plaintiff claims that while held in the Macomb County Jail, Macomb

County Sheriffs Deputies destroyed his personal property, planted a razor blade in

his cell, improperly disciplined him, improperly handled his appeals and

grievances, conspired to deny him medical attention, and denied him proper access

to the jail law library and legal materials.  Plaintiff also alleges that he suffered

food poisoning due to the improper handling or storage of food by unidentified

individuals at the jail, and that defendants Circuit Court Judge James M. Biernat

and Macomb County Assistant Prosecutor Margaret DeMuynck "ignored that fact

that [plaintiff] was not legally or properly housed in the Centerline [sic] Jail – and

in fact [his] Constitutional rights were violated."  (Dkt. 1).

### B.    Parties' Arguments

#### 1.    Defendant Wroblewski's motion for summary judgment (Dkt. 165)

Defendant Robert Wroblewski is a detective with the Center Line Police

Department.  Defendant Wroblewski argues that the only allegation in plaintiff's

complaint that relates to his detention at Center Line is paragraph 30, in which he

alleges:

> Plaintiff was locked into a garage in the Centerline [sic]
> Police Department, no heat, no food, nor water.  My
> jacket was taken and I was left there for 6 ½ hours – I am
> old man with many medical problems, even Tri Cardi
> [sic] heart condition – I was handcuffed to a steel bar on
> the wall on 12/21/09.

4

(Dkt. 1, ¶ 30).  Defendant Wroblewski argues that the allegations, even if taken as true, do not amount to a deprivation sufficient enough to support a claim for violation of plaintiff's constitutional rights.  Defendant Wroblewski further argues that he is entitled to summary judgment because the evidence demonstrates that plaintiff's allegations are without basis in fact.  Defendant offers affidavit testimony that he was not involved in the decision to put plaintiff in the garage and that he had no interaction with plaintiff while he was in the garage.  (Dkt. 165-2).  According to defendant, plaintiff was brought to the Center Line Department of Public Safety following his arrest at 1515 (3:15 p.m.), and plaintiff admits that defendant Wroblewski first became involved with plaintiff when he began his interview of plaintiff at approximately 2000 (8:00 p.m.).  (*Id.*; Dkt. 165-9).  During that interview, plaintiff requested something to eat, and he admits that he was provided with a burger, fries and a drink during the interview.  (165-2, 5, 10).  Defendant also argues that he is entitled to qualified immunity, and that plaintiff cannot demonstrate that defendant Wroblewski violated "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Defendant Wroblewski finally argues that plaintiff's failure to follow administrative procedures for complaints about the conditions of his detention at Center Line requires dismissal for failure to exhaust pursuant to the Prison Litigation Reform Act ("PLRA").

5

Plaintiff responds to defendant's motion and argues that the deprivation of food, water and heat for 6 ½ hours constitutes a constitutional violation sufficient to defeat defendant's qualified immunity defense.  Plaintiff also argues that Center Line did not have a grievance procedure, and thus defendant's failure to exhaust defense fails.  Finally, plaintiff also makes, for the first time, numerous other allegations, which do not appear in plaintiff's Complaint, are not supported by any evidence, and that do not have anything to do with the conditions of plaintiff's confinement at Center Line and plaintiff's claims against defendant Wroblewski.  Plaintiff alternatively requests that the Court "hold this motion for summary judgment in abeyance" pending his appeal of this Court's denial of his motion to amend his complaint,[1] or to permit the plaintiff to file an amended complaint.

Defendant Wroblewski argues in his reply brief that plaintiff's affidavit offered in support of his motion contains allegations unsupported by personal knowledge and that plaintiff still has failed to offer any evidence of defendant's

---

[1] On September 26, 2012, this Court issued an Order denying Plaintiff's Motion to Amend the Complaint.  (Dkt. 146).  Plaintiff filed an objection to this Order on October 18, 2012 (Dkt. 158), and a Notice of Appeal with the Sixth Circuit Court of Appeals of this Order on October 25, 2012.  (Dkt. 163).  On October 26, 2012, the Court issued an Order overruling plaintiff's objection to the undersigned's Order on plaintiff's motion to amend the complaint. (Dkt. 161).  Plaintiff then filed an amended notice of appeal with the Sixth Circuit of this Court's Order denying Plaintiff's motion to amend his Complaint on November 30, 2012.  (Dkt. 185). On December 14, 2012, the Sixth Circuit Court of Appeals dismissed the appeal, finding that it lacked jurisdiction over the appeal of the undersigned's order because "[a]n order of a magistrate judge is not appealable unless the magistrate judge is given plenary jurisdiction pursuant to 28 U.S.C. § 636(c)(1)," and further finding that "an order denying a motion to amend a complaint is not appealable."  (Dkt. 187).

personal involvement in the claimed constitutional violations, appearing to rely instead on plaintiff's assumptions regarding the role of "lead detective." Defendant argues that plaintiff has failed to allege facts that would give rise to a constitutional violation, and that not every unpleasant experience in detention equals a constitutional violation.  Defendant Wroblewski also argues that the denial of plaintiff's motion to amend the complaint is not appealable, and that plaintiff has nevertheless failed to allege facts supporting an actionable claim against defendant or the city of Center Line.

In response to defendant's reply brief, plaintiff argues that he has alleged facts constituting a constitutional violation.  He also presents arguments that he believes he should not have been charged with actual escape and destruction of personal police property.[2]

### 2.    Defendants' motion to dismiss (Dkt. 172)

Defendants argue that the allegations in plaintiff's complaint are insufficient to support his claims against defendants Mark A. Hackel, Michelle M. Sanborn,

---

[2] According to defendant, during plaintiff's detention at Center Line, while in the garage, plaintiff was placed on a bench adjacent to the wall and handcuffed to a bar next to the bench. At some point, plaintiff managed to free himself from his handcuffs and attempt to escape.  For approximately 27 minutes, plaintiff wandered around the garage attempting to find a way out, damaging police property (one of the doors) in the process, before he was ultimately discovered and re-cuffed to the bar.  (Dkt. 165, Pg ID 1664).  Plaintiff does not dispute that he freed himself from the handcuffs and tried to open the doors, arguing instead that the handcuffs were not necessary "because plaintiff got out of them, and still the garage could not be opened."  (Dkt. 173, Pg ID 1856).

Judge James M. Biernat, Margaret DeMuynck, and B. Kutell.  First, defendants argue that plaintiff identifies Hackel and the Jail Administrator (Sanborn) as defendants, but then makes no mention of either defendant, or any policy, procedure or custom attributable to them, throughout the Statement of Facts in his Complaint.  Plaintiff later makes the conclusory statement that Hackel is "responsible for all constitutional violations of his Macomb County Sheriffs staff, for the lack of policy or safeguards in Macomb County Jail."  (Dkt. 1, Pg ID 17). Defendants argue that plaintiff's claims against Hackel and Sanborn in their personal capacity fail because he fails to allege their personal involvement in the alleged deprivation of his civil rights.  Defendants further argue that plaintiff's claims against Hackel and Sanborn in their official capacity fail because plaintiff fails to plead the existence of a policy or custom that caused the alleged constitutional violations.

Defendants also argue that plaintiff's Complaint fails to state a claim against defendants Circuit Court Judge Biernat and Assistant Prosecutor DeMuynck. Plaintiff only alleges that defendants Biernat or DeMuynck allegedly "ignored the fact that [plaintiff] was not legally or properly housed in the Centerline [sic] jail – and in fact [that his] constitutional rights were violated."  (Dkt. 1, ¶ 30). Defendants argue that defendants Biernat and DeMuynck are entitled to absolute immunity from plaintiff's claims against them in their personal capacities because

8

judges are absolutely immune from liability under § 1983 for damages arising from their judicial or adjudicatory acts, and prosecutors enjoy absolute immunity for all acts undertaken in preparation for the initiation of judicial proceedings or for trial which occur in the course of their roles as advocates for the State. Defendants further argue that plaintiff fails to allege sufficient facts to sustain his claims against defendants Biernat and DeMuynck because he fails to provide any factual support for his conclusory allegation that the defendants "ignored the fact that [he] was not legally or properly housed in the Centerline [sic] jail – and in fact [that his] constitutional rights were violated." (Dkt. 1, ¶ 30). Thus, plaintiff's Complaint is insufficient to support a claim for any constitutional violation by defendants Biernat and DeMuynck, and it should be dismissed.

Defendants finally argue that plaintiff only mentions defendant Kutell one time in his Complaint where he alleges that defendant Kutell was one of several deputies "collectively involved" with a number of incidents that took place on May 28, 2010. (Dkt. 1, Pg ID 14-15). While plaintiff then alleges specific actions by Deputies Furno, Campau, Masakowski and Mazzarelli, he fails to mention defendant Kutell at all, or allege any action taken by him. Defendants argue therefore that plaintiff's complaint as to defendant Kutell is insufficient as a matter of law to establish a constitutional violation, and should be dismissed.

Plaintiff argues in response that he sent written complaints to defendants Hackel and Sanborn about alleged constitutional violations, including denied use of the law library, denial of pencils, pen, paper, carbon paper or envelopes, denial of postage, the right to take a shower when he wanted or books or a television to watch, and of being set up by the deputies, and thus made the defendants "directly aware" of these alleged constitutional violations but they did nothing to stop them. Plaintiff cites a line of cases for the proposition that a municipality may be held liable for even a "single incidence of constitutional violation . . . by a final policy maker." *See, e.g., Welch v. Ciampa*, 542 F.3d 927, 942 (1st Cir. 2008). Plaintiff further contends that defendants Hackel and Sanborn have failed to prove that constitutionally adequate policies were in place at the County jail. Plaintiff then argues that his claims against defendants Biernat and DeMuynck should not be dismissed because of the alleged misuse of plaintiff's birth name (Lawrence Stravaty) by the defendants during his criminal proceeding. Plaintiff also argues that he has adequately pleaded that defendant Kutell was "collectively involved" in the alleged deprivations of his constitutional rights, and asserts that defendant Kutell's name is on the hearing report in connection with plaintiff's disciplinary hearing. Finally, plaintiff argues that he should be allowed to file his amended complaint to cure the alleged deficiencies in his Complaint.

10

In reply, defendants argue plaintiff improperly relies on additional allegations that are not contained in his Complaint, and has failed to adequately respond to defendants' motion to dismiss.  Defendant contends that plaintiff has failed to allege any actions attributable to defendants Hackel and Sanborn in his Complaint and has failed to plead a specific policy or practice that led to the alleged constitutional violations, but instead attempts to improperly shift the burden to defendants to affirmatively prove that the policies and procedures in the jail were constitutionally adequate.  According to defendants, plaintiff's response to defendants' motion as to defendants Biernat and DeMuynck centers around the alleged misuse of plaintiff's birth name (Lawrence Stravaty) during the criminal proceedings.  However, plaintiff's complaint contains no reference to the alleged misuse of plaintiff's birth name, and, in any event, such a claim would be barred by "res judicata" because plaintiff made this same claim in another complaint filed against defendants Biernat and DeMuynck and Prosecutor Eric Smith, which was dismissed for failure to state a claim.  And, even if plaintiff could bring the "name" allegations in this lawsuit, because those allegations pertain to the underlying state court criminal proceedings, defendants Biernat and DeMuynck still would be entitled to absolute immunity.

## III.   ANALYSIS AND CONCLUSIONS

### A.   Standards of Review

11

### 1.    Motion to Dismiss under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

The United States Supreme Court raised the bar for pleading requirements beyond the old "no-set-of-facts" standard of *Conley v. Gibson*, 355 U.S. 41, 78 (1957), that had prevailed for the last few decades.  *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Twombly*, 550 U.S. at 555.  In *Iqbal*, the Supreme Court explained that a civil complaint only survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678.  The Sixth Circuit observed that this new standard is designed to screen out cases that, while not utterly impossible, are "implausible."  *Courie*, 577 F.3d at 629.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  And although the Court must accept all well-pleaded factual allegations in

12

the complaint as true, it need not "'accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Iqbal*, 556 U.S. at 678.  The Sixth Circuit noted that "[e]xactly how implausible is 'implausible' remains to be seen, as such a malleable standard will have to be worked out in practice." *Courie*, 577 F.3d at 629.

Where a plaintiff is proceeding without the assistance of counsel, the court is required to liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney.  *See e.g. Simmons v. Caruso*, 2009 WL 2922046, at *4 (E.D. Mich. Sept. 8, 2009) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999)).  Thus, the Court must read plaintiff's *pro se* complaint indulgently and accept plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (finding that the Court of Appeals improperly departed "from the liberal pleading standards set forth by Rule 8(a)(2)" and failed to "liberally construe" the *pro se* complaint at issue).

## 2.   Summary Judgment

Summary judgment is appropriate under Rule 56(b) "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court stated the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the non-moving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Id.* at 478-79. A genuine issue of material fact exists only when, assuming the truth of the non-moving party's evidence and construing all inferences from that evidence in the light most favorable to the non-moving party, there is sufficient evidence for a trier of fact to find for the non-moving party. *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

"In deciding a motion for summary judgment, [the] court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). This is not to say that some credibility determinations are beyond what is appropriate in deciding a motion for summary judgment. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury

14

could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B.   Defendant Wroblewski's motion for summary judgment

#### 1.   Plaintiff's complaint fails to state a claim against defendant Wroblewski

Defendant Wroblewski first argues that plaintiff's complaint against him should be dismissed because plaintiff has failed to name or otherwise mention defendant Robert Wroblewski in his Complaint.  (Dkt. 1).  On June 20, 2011, this Court ordered plaintiff to provide the names of the various Jane or John Doe Defendants in his Complaint.  (Dkt. 46).  On July 22, 2011, plaintiff filed his Response to the Court's June 20, 2011 Order, in which he identified, among others, "Robert Wroblewski, Detective Centerline [sic] Police Department, 7070 E. Ten Mile Rd., Centerline, MI 48015."  (Dkt. 48, Pg ID 297; Dkt. 57).  However, other than plaintiff's "identification" of Mr. Wroblewski as a defendant, there are no other references to defendant Wroblewski in the Complaint, and there are no substantive allegations from which his specific involvement can even be inferred. Plaintiff's Complaint makes only one factual allegation that relates to his detention at Center Line:

> Plaintiff was locked into a garage in the Centerline [sic] Police Department, no heat, no food, nor water.  My jacket was taken and I was left there for 6 ½ hours – I am

15

> old man with many medical problems, even Tri-Cardi
> [sic] heart condition – I was handcuffed to a steel bar on
> the wall on 12-21-2009.

(Dkt. 1, ¶ 30).

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *Twombly*, 550 U.S. at 555 (holding that in order to state a claim, the plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Indeed, "[w]here a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints." *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974).  As this Court recently recognized:

> The Sixth Circuit law is in accord:
>
> Where a person is named as a defendant without an
> allegation of specific conduct, the complaint against him
> is subject to dismissal, even under the liberal construction
> afforded to *pro se* complaints.  *See Gilmore v. Corr.
> Corp. of Am.*, 92 Fed. Appx. 188, 190 (6th Cir. 2004)
> (dismissing complaint where plaintiff failed to allege
> how any named defendant was involved in the violation
> of his rights); *Frazier v. Michigan*, 41 Fed. Appx. 762,
> 764 (6th Cir. 2002) (dismissing plaintiff's claim where
> complaint did not allege with any degree of specificity
> which of the named defendants were personally involved
> in or responsible for each alleged violation of rights);
> *Griffin v. Montgomery*, 238 F.3d 421 [published in full-
> text format at 2000 U.S.App. LEXIS 30782], 2000 WL
> 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring
> allegations of personal involvement for each defendant);

16

> *Rodriguez v. Jabe*, 904 F.2d 708, 1990 WL 82722, at *1
> (6th Cir. 1990) ("Plaintiff's claims against those
> individuals are without a basis in law as the complaint is
> totally devoid of allegations as to them which would
> suggest their involvement in the events leading to his
> injuries.") . . . .

*Baker v. Noronha*, 2013 WL 1720803, at *3 (E.D. Mich. Feb. 27, 2013) (quoting

*Cameron v. Howes*, 2010 WL 3885271 (W.D. Mich. Sept. 28, 2010)), *adopted by*

2013 WL 1720899 (E.D. Mich. Apr. 22, 2013).

To state a claim under 42 U.S.C. § 1983, "a plaintiff must plead that each

Government-official defendant, *through the official's own individual actions*, has

violated the Constitution." *Iqbal*, 565 U.S. at 676 (emphasis added). Although

defendant Wroblewski was eventually identified by plaintiff as a "John Doe

Defendant," plaintiff fails to allege that defendant Wroblewski was personally

involved in the alleged constitutional violations, or to allege any substantive

allegations from which defendant Wroblewski's personal involvement could be

inferred. Failure to "allege, with particularity, facts that demonstrate what *each*

defendant did to violate the asserted constitutional right" requires dismissal of

plaintiff's complaint. *See Marcilis v. Twp. of Redford*, 693 F.3d 589, 596-97 (6th

Cir. 2012) (quoting *Lanham v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)); *Baker*,

2013 WL 1720803, at *3. Accordingly, the undersigned finds that plaintiff fails to

state a claim against defendant Wroblewski and plaintiff's Complaint as to this

defendant should be dismissed.

### 2.     Defendant Wroblewski is entitled to summary judgment on plaintiff's claims against him

Defendant Wroblewski also argues that he is entitled to summary judgment on plaintiff's claims against him. Plaintiff alleges that he was deprived of food and water and was kept in an unheated garage while detained by the City of Center Line, and that these conditions violated the Eighth and Fourteenth Amendments of the United States Constitution.[3] In his motion, defendant Wroblewski argues that he is entitled to summary judgment because he enjoys qualified immunity from damages. In support of his motion, defendant has offered his own affidavit, a transcript of plaintiff's interview, plaintiff's discovery responses, and excerpts of plaintiff's deposition transcript. (Dkt. 165-2, 3, 5 8-10).

The doctrine of qualified immunity means that "'[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Caldwell*

---

[3] In this case, because plaintiff was a pretrial detainee during the time he was at Center Line (rather than a convicted prisoner), the applicable constitutional provision is the Due Process Clause of the Fourteenth Amendment (rather than the Eighth Amendment). *See Phelps v. Coy*, 286 F.3d 295, 300 (6th Cir. 2002). However, the Eighth Amendment's protection against cruel and unusual punishment extends to pretrial detainees through the Fourteenth Amendment's Due Process Clause, *see Whitley v. Albers*, 475 U.S. 312, 327 (1986), and thus claims by pretrial detainees challenging conditions of confinement are analyzed under the Eighth Amendment. *See Thompson v. Cnty. of Medina*, 29 F.3d 238, 242 (6th Cir. 1994); *see also Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 494-95 (6th Cir. 2008) (asserting that the same deliberate-indifference inquiry applies under the Fourteenth Amendment as under the Eighth Amendment).

*v. Moore*, 968 F.2d 595, 599 (6th Cir. 1992) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Defendant bears the burden of pleading qualified immunity, but plaintiff bears the burden of showing that the defendant's conduct violated a right so clearly established that a reasonable official in his position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct.  *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002) (citation omitted) (explaining that "[t]he ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity").

The Supreme Court had established a two-part test in order to determine whether qualified immunity is applicable to a particular situation.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The first part of the test involved a determination of whether the facts of the case, viewed in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right."  *Id*.  If the first question was resolved in the affirmative, then the court would decide "whether the right was clearly established."  *Id*.  If both questions are resolved in the affirmative, then the doctrine of qualified immunity does not apply and the case can proceed.

The Supreme Court revisited its decision in *Saucier* and concluded that mandatory order of the two part test for determining if qualified immunity applied was no longer sound based on several factors including judicial economy.  *Pearson v. Callahan*, 555 U.S. 223, 227 (2009).  While not modifying the factors that

19

should be considered in such a decision, the Court held that sometimes it makes
sense to allow the second part of the test to be decided first and that such a decision
may resolve the controversy without having to address the first part of the test. *Id.*
In *Pearson*, the § 1983 claim of the plaintiff was based on an allegedly unlawful
search conducted by the defendant police officers. Without having to engage in the
perhaps more complicated decision of determining whether plaintiff's
constitutional rights had been violated, the Court found that the constitutional right
claimed by plaintiff was not clearly established where lower court case law was
consistent with the conduct of the officers and "principles of qualified immunity
[should] shield an officer from personal liability when an officer reasonably
believes that his or her conduct complies with the law." *Id.* at 244-45. "This
generally means that 'we are free to consider those questions in whatever order is
appropriate in light of the issues before us.'" *Jones v. Byrnes*, 585 F.3d 971, 975
(6th Cir. 2009) (quoting *Moldowan v. City of Warren*, 570 F.3d 698, 720 (6th Cir.
2009)).

### a.   Whether plaintiff has established a constitutional violation

The first question in the qualified immunity analysis is whether the plaintiff
has established a *prima facie* case of a constitutional violation. *See Byrnes*, 585
F.3d at 975-76. Plaintiff's sole allegation regarding his time at the City of Center
Line is that he was deprived of food and water and was detained in a cold garage

for up to 6 ½ hours. (Dkt. 1, ¶ 30). The Eighth Amendment[4] prohibits conduct by officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam). The deprivation alleged "must result in the denial of 'the minimal civilized measure of life's necessities.'" *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Moreover, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Id.* at 348. The function of a federal court in a conditions-of-confinement case is not how best to operate a jail facility, nor to decide what is most desirable to the inmates. *Walker v. Mintzes*, 771 F.2d 920, 927 (6th Cir. 1985). "The Constitution does not mandate comfortable prisons." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

Eighth Amendment claims based upon the conditions of a prisoner's confinement must meet both an objective and subjective standard. *See Wilson v. Seiter*, 501 U.S. 294 (1991). Objectively, the condition of confinement complained

---

[4] As explained above, as a pretrial detainee, plaintiff's constitutional rights as to defendant Wroblewski were secured through the Fourteenth Amendment's Due Process Clause rather than directly from the Eighth Amendment's prohibition against cruel and unusual punishment. Through the Fourteenth Amendment, pretrial detainees are entitled to the same Eighth Amendment protections as convicted prisoners. *See Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010); *Ford*, 535 F.3d at 495.

21

of must amount to an "extreme deprivation."  *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992); *Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004).  Subjectively, plaintiff must assert facts showing that defendant acted with "deliberate indifference" to a substantial risk.  *See Farmer*, 511 U.S. at 834.

## I.    *Objective standard*

The objective component requires the court "to assess whether society considers the risk complained of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk.  In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate."  *Helling v. McKinney*, 509 U.S. 25, 36 (1993).  Plaintiff's bare allegations here of being "locked into a garage in the Centerline [sic] Police Department, no heat, no food, nor water.  My jacket was taken and I was left there for 6 ½ hours . . ." are insufficient as a matter of law to state a claim for deprivation of constitutional rights.

In assessing whether an alleged Eighth Amendment violation on the basis of exposure to cold temperatures satisfies the objective component, courts look to the duration of exposure and the totality of conditions contributing to the alleged deprivation.  *See Spencer v. Bouchard*, 449 F.3d 721, 728 (6th Cir. 2006) (abrogated on other grounds by *Jones v. Bock*, 549 U.S. 199 (2007)).  "Short term deprivations . . . do not rise to the level of a constitutional violation."  *Washington*

22

*v. Burks*, 2008 WL 8694601, at *10 (E.D. Mich. Dec. 17, 2008) (citing *Siller v. Dean*, 2000 WL 145167, at *2 (6th Cir. Feb. 1, 2000)), *adopted by* 2011 WL 5375189 (E.D. Mich. Nov. 4, 2011).  For example, in *Spencer*, the plaintiff alleged that he was kept in a cold cell block without appropriate clothing for more than ninety days, and he presented evidence that the corrections officers wore winter coats in this cell block, that rain and snow leaked into his cell, and that officers deliberately removed self help measures that inmates had constructed in an attempt to remedy the cold.  *Id.* at 728.  The court found that these facts, collectively, showed sufficient deliberate indifference to survive summary judgment.  *Id.* at 729.

However, in *Palmer v. Abdalla*, 2012 WL 4473206 (S.D. Ohio Sept. 4, 2012), *adopted by* 2012 WL 4473203 (S.D. Ohio Sept. 26, 2012), the court held that plaintiff's exposure to cold temperatures for approximately three-and-a-half days, resulting in claimed temporary numbness in his hands and feet and a subsequent cold, did not support a finding that plaintiff's conditions of confinement were unconstitutional.  *Id.* at *5.  And, in *Harris v. Hulkoff*, 2007 WL 2479467 (W.D. Mich. Aug. 28, 2007), the court held that plaintiff failed to demonstrate a violation of his Eighth Amendment rights when, although he alleged that he subjectively felt cold, he was at most deprived of warmth for fifty-two hours.  *Id.* at *4; *see also Dean v. Campbell*, 156 F.3d 1229, 1998 WL 466137

(Table) (6th Cir. 1998) ("[Plaintiff's] allegations of cold temperatures in his cell, lack of cold water in his cell, cold meals for a short period of time, lack of a broom, and limited recreation opportunities also fail to allege facts showing that he was subjected to the type of extreme deprivations which are necessary for an Eighth Amendment conditions of confinement claim."); *Washington v. Burks*, 2008 WL 8694601, at *10 (E.D. Mich. Dec. 17, 2008) (plaintiff's allegations that her cell was cold, she was deprived of a blanket and on another occasion was forced to sleep on the floor do not rise to the level of an Eighth Amendment violation), *adopted by* 2011 WL 5375189 (E.D. Mich. Nov. 4, 2011).

Similarly, courts have consistently held that short term deprivation of food and/or water does not constitute a constitutional violation.  *See, e.g., Hartsfield v. Vidor*, 199 F.3d 305, 310 (6th Cir. 1999) ("deprivations of fresh water and access to a toilet for a 20-hour period, while harsh, were not cruel and unusual punishment"); *Hughes v. Patino*, 917 F.2d 24 (Table), 1990 WL 161602, at *1 (6th Cir. Oct. 23, 1990) ("The denial of a meal is not so cruel or unusual as to run afoul of the eighth amendment regardless of fault."); *Adams v. Prunick*, 2010 WL 2584031, at *2 (W.D. Mich. June 24, 2010) ("the deprivation of three meals on one day was not sufficiently serious to pose a serious risk of harm to [plaintiff] who has not presented evidence of any discomfort"); *Marr v. Case*, 2008 WL 191326, at *3 (W.D. Mich. Jan. 18, 2008) (collecting cases holding that missing a single meal

24

does not rise to the level of a constitutional violation).   Simply put, "allegations about temporary inconveniences do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency." *Watson v. Charles*, 2011 WL 124649, at *3 (W.D. Mich. Jan. 14, 2011); *see also Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998) ("Whether the deprivation of food falls below [the Eighth Amendment] threshold depends on the amount and duration of the deprivation. . . .  Missing a mere one out of every nine meals is hardly more than that missed by many working citizens over the same period.").

        Analyzing the alleged constitutional deprivations here through the framework of the above-mentioned case law requires the conclusion that the objective prong of plaintiff's conditions-of-confinement claim simply cannot be satisfied.  Taking plaintiff's allegations as true, six-and-a-half hours in an enclosed, yet unheated, garage without food and water is certainly not the kind of "extreme deprivation" that the Constitution was intended to protect.  Further, although plaintiff claims that it was below freezing on the day of his arrest, he has not offered any evidence as to the actual temperature on that day.  As defendant correctly states, the risk of being cold, hungry or thirsty for the comparatively brief period of time between arrest and interview is simply not "so grave that it violates contemporary standards of decency" because the conditions were neither extreme

25

nor prolonged. Therefore, the undersigned suggests that no reasonable trier of fact could find in plaintiff's favor on the objective component of his Eighth Amendment claim against defendant Wroblewski, and his claim should be dismissed.

### ii.     Subjective standard

Plaintiff also fails to raise a genuine issue of fact for trial on the subjective component because no reasonable trier of fact could find on this record that *defendant Wroblewski* acted with "deliberate indifference" to any substantial risk of harm to plaintiff. *See Farmer*, 511 U.S. at 834. There simply is no evidence connecting defendant Wroblewski to the alleged deprivations. Plaintiff admits that his only interaction with the defendant was during the interview, when plaintiff was inside and provided with food and water. Further, there is no evidence that defendant Wroblewski even knew about the allegedly unconstitutional conditions, or that plaintiff complained to the defendant about the conditions. (Dkt. 165-3). "The deliberate indifference requirement is satisfied only if the official knows the inmate faces *substantial* risk of *serious* harm *and* disregards that risk by failing to take reasonable measures to abate it." *Spencer*, 449 F.3d 729. Plaintiff has failed to present a genuine issue of fact that defendant Wroblewski knew about the alleged conditions, or that the conditions presented a "substantial" risk of "serious" harm. Therefore, in the opinion of the undersigned, plaintiff has not demonstrated

26

facts on which a jury could reasonable decide in his favor. Accordingly, defendant Wroblewski should be awarded summary judgment on plaintiff's Eighth Amendment/Fourteenth Amendment claim against him.

### b. Whether defendant Wroblewski violated a clearly established right

In the alternative, even if plaintiff could raise a fact issue that defendant Wroblewski's actions rose to the level of violating plaintiff's constitutional rights, plaintiff has failed to satisfy his burden to show that it was clearly established at the time of plaintiff's detention that actions of the sort alleged crossed the constitutional line. "To be clearly established, a right must be sufficiently clear that *every* reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (emphasis added). Further, the "clearly established" inquiry "must be undertaken in consideration of the specific context of the case, not as a broad, general proposition. . . ." *Katz*, 533 U.S. at 201. Thus, in this case, plaintiff bears the burden of demonstrating that failing to provide food or water to an arrestee within the first six-and-a-half hours of his arrest was unconstitutional. As demonstrated above, the existing precedent regarding the conditions as alleged by plaintiff here do not clearly establish a right to heat, food or water during the brief detention period following plaintiff's arrest. Defendant Wroblewski is therefore entitled to qualified immunity, even if his actions had been found to constitute a constitutional violation. Accordingly,

27

plaintiff's claims against defendant Wroblewski should be dismissed with prejudice.

### C. Defendants' motion to dismiss the claims against defendants Hackel, Sanborn, Biernat, DeMuynck and Kutell

#### 1. Defendants Hackel and Sanborn

In his Complaint, plaintiff names Mark A. Hackel and "Jane or John Doe - Macomb County Jail Administrator," in both their personal and official capacities. (Dkt. 1). Plaintiff subsequently identified Michelle M. Sanborn as the Macomb County Jail Administrator. (Dkt. 48, Pg ID 295). However, other than identifying defendants Hackel and Sanborn at the beginning of his Complaint, plaintiff fails to mention defendant Hackel in the "Statement of Facts" section of his Complaint, or set forth any policy, procedure or custom attributable to either defendant Hackel or Sanborn. Plaintiff refers to defendant Hackel in the "Cause of Action(s)" section of his Complaint, where plaintiff makes the conclusory statement that Hackel is "responsible for all constitutional violations of his Macomb County Sheriffs staff, for the lack of policy or safeguards in Macomb County Jail." (Dkt. 1). Plaintiff also fails to allege any action by defendant Sanborn, other than to allege that he filed a "written Complaint" regarding not receiving a response from the Jail Administrator (subsequently identified as Sanborn) of a grievance appeal. (Dkt. 1).

##### a. Plaintiff's claims against defendants Hackel and Sanborn in their personal capacities should be dismissed

28

The Supreme Court has made clear that liability in a § 1983 action cannot be based on a theory of *respondeat superior*. *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Thus, "[t]o recover damages under 42 U.S.C. § 1983, a plaintiff must establish a defendant's *personal responsibility* for the claimed deprivation of a constitutional right." *Broder v. Corr. Med. Servs., Inc.*, 2008 WL 704229, at *7 (E.D. Mich. Mar. 14, 2008) (emphasis added, quoting *Diebitz v. Arreola*, 834 F. Supp. 298, 304 (E.D. Wis. 1993)). In other words, in order to state a claim under § 1983, "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was *personally involved* in the deprivation of his civil rights. Liability under § 1983 must be based on the *personal involvement* of the defendant." *Id.* (emphasis added, internal quotations and citations omitted); *see also Rizzo v. Goode*, 423 U.S. 362, 372-73 (1976) (liability under § 1983 is predicated upon an affirmative link or connection between the defendant's actions and the claimed deprivations).

Plaintiff has not pled any facts showing that defendants Hackel or Sanborn were personally involved in the alleged deprivation of his civil rights. As explained above, to state a claim under 42 U.S.C. § 1983, "a plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution." *Iqbal*, 556 U.S. at 676 (emphasis added); *Baker*, 2013 WL 1720803, at *3. Plaintiff's allegations fail to plead that

29

defendants Hackel or Sanborn engaged in any active unconstitutional behavior. Plaintiff's allegation that Hackel is "responsible for all constitutional violations of his Macomb County Sheriffs staff, for the lack of policy or safeguards in Macomb County Jail" is insufficient to state claim because "[l]iability cannot be based solely on the right to control employees," *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), and simply failing to act after learning of a subordinate's unconstitutional conduct will not impose liability upon a supervisory official. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Rather, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way *directly participated in it.*" *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (emphasis added). Further, plaintiff's allegation that defendant Sanborn did not respond to a grievance is insufficient to state a claim. *See Shehee*, 199 F.3d at 300 (finding that a court may not impose liability under 42 U.S.C. § 1983 on a defendant simply because that defendant denied an administrative grievance or failed to act based upon information contained in the grievance); *Baker*, 2013 WL 639336, at *4 (section 1983 liability cannot be predicated on plaintiff's lone reference to defendant's involvement in responding to a Step 1 grievance).[5] Accordingly, plaintiff does not claim that defendants

---

[5] Further, plaintiff's reliance on a line of cases for the proposition that a municipality may be held liable for even a "single incidence of constitutional violation . . . by a final policy maker" is misplaced. In those cases, specific actions were alleged to have been taken by the individual with "policy making authority." *See, e.g., Welch v. Ciampa*, 542 F.3d 927, 942 (1st

Hackel or Sanborn were personally involved in the alleged constitutional violations and thus has failed to state a claim against them in their personal capacities, and those claims should be dismissed with prejudice.

> **b.** **Plaintiff's claims against defendants Hackel and Sanborn in their official capacities should be dismissed**

Plaintiff also alleges in his Complaint that the suit is against defendants Hackel and Sanborn in their official capacities. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). However, under *Monell*, liability against an entity or agent in his official capacity can only be found in situations where a deprivation of constitutional rights occurs as a result of an entity's policy, custom, or practice. *Raub v. Corr. Med. Servs.*, 2008 WL 160611, at *2 (E.D. Mich. Jan. 15, 2008) (citing *Monell*, 436 U.S. at 694). The Sixth Circuit has held that to satisfy the requirements of *Monell*, the plaintiff must "identify the policy, connect the policy to the [entity] itself, and show that the particular injury was incurred because of the execution of that policy." *Garner v.*

---

Cir. 2008) (alleging chief of police made decision not to reappoint plaintiff based on protected speech); *Moldowan v.City of Warren*, 578 F.3d 351, 394 (6th Cir. 2009) (alleging individual with "policy making authority" ordered destruction of potentially exculpatory evidence), *cert. denied*, 130 S. Ct. 3504 (2010). Conversely, here, plaintiff has not alleged any similar direct actions attributable to defendants Hackel and Sanborn.

31

*Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (citation omitted); *Raub*,

2008 WL 160611, at *2 (quoting *Oklahoma City v. Tuttle*, 471 U.S. 808, 823

(1985)) (there must be an "affirmative link between the policy and the particular

constitutional violation alleged").

Plaintiff here has failed to plead the existence of a specific policy or practice

that led to the alleged constitutional violations.  There are no allegations of policies

and/or customs in the Macomb County Sheriff's Department or the Macomb

County Jail, other than plaintiff's conclusory complaint at the end of his Complaint

that defendant Hackel is responsible "for the lack of policy or safeguards in

Macomb County Jail."  (Dkt. 1).  In his response to the motion to dismiss, plaintiff

attempts to shift the burden to defendants, arguing that defendants Hackel and

Sanborn must affirmatively prove that the policies and procedures in place at the

jail were constitutionally adequate.  However, that is not the law.  Rather, it is

plaintiff's burden to identify the policy or custom and show that the alleged injury

was caused by the policy or custom.  *See Garner*, 8 F.3d at 364.  Plaintiff's failure

to meet his burden to identify a policy, or demonstrate an "affirmative link between

the policy and the particular constitutional violation alleged," is fatal to his § 1983

claims against defendants Hackel and Sanborn, and all claims against them in their

official capacities should be dismissed with prejudice.

### 2.    Defendants Biernat and DeMuynck

Plaintiff asserts claims against defendants Judge Biernat and Assistant Prosecutor DeMuynck in their individual and official capacities.  (Dkt. 1).  The sole allegation in plaintiff's Complaint against these defendants is that they "ignored the fact that [plaintiff] was NOT legally or properly housed in the Centerline [sic] Jail – and in fact [his] Constitutional rights were violated."  (*Id.*).

### a.    Plaintiff's complaint fails to state a claim against defendants Biernat and DeMuynck

The entirety of plaintiff's allegations against defendants Biernat and DeMuynck is the claim that they "ignored the fact that [plaintiff] was not legally or properly housed in the Centerline Jail – and in fact [that his] constitutional rights were violated."  (Dkt. 1).  Plaintiff provides no factual support for these conclusory allegations or any further detail as to the facts that were allegedly "ignored" by the defendants, or what actions these defendants allegedly took or failed to take that he believes violated his constitutional rights.  The undersigned is aware that a *pro se* complaint should be held to a "less stringent standard" than one drafted by an attorney.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  However, even a *pro se* complaint must plead facts sufficient to show a legal wrong has been committed for which the plaintiff may be granted relief.  *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) (the court is not required "to conjure up unplead allegations") (citation omitted).  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) he was deprived of a right, privilege, or immunity secured by the federal

Constitution or laws of the United States, and (2) the deprivation was caused by a person acting under color of state law. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-57 (1978). Plaintiff's allegations against these defendants are conclusory and vague, and it is well-established that conclusory allegations are insufficient to state a civil rights claim under § 1983. *See, e.g.*, *Lanier v. Bryant*, 332 F.3d 999, 1007 (6th Cir. 2003). Despite the liberal pleading standard accorded to *pro se* plaintiffs, the undersigned finds that plaintiff's bare bones complaint is legally insufficient to state a § 1983 claim against defendants Biernat and DeMuynck and that it should be dismissed as to these defendants.

In response to defendants' motion to dismiss, plaintiff raises allegations not contained anywhere in his Complaint regarding the alleged misuse of his birth name by defendants Biernat and DeMuynck during the state court criminal proceedings against plaintiff. However, in deciding a motion to dismiss under Rule 12(b)(6), the court is generally limited to examination of the complaint and the exhibits attached thereto alone and may not consider the factual allegations contained in plaintiff's response. *See Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001). The Sixth Circuit follows the general rule that "[m]atters outside the pleadings are not to be considered by a court in ruling on a 12(b)(6) motion to dismiss." *Weiner v. Klais & Co.*, 108 F.3d 86, 98 (6th Cir. 1997), *overruled on other grounds*, *Swierkiwica v. Sorema, N.A.*, 534 U.S. 506 (2002). Thus, because

34

plaintiff's newly-raised "name" allegations are not found in the Complaint, the undersigned may not consider those allegations in ruling on defendants' motion to dismiss. Moreover, even if plaintiff's "name" claim could be considered, it would be barred by res judicata because, as defendants explain, plaintiff filed a separate complaint in federal court against Judge Biernat, Assistant Prosecutor DeMuynck and Prosecutor Eric Smith alleging that the Macomb County court system was using the name "Lawrence Stravaty rather than Joseph Corsetti." This complaint was dismissed for failure to state a claim upon which relief may be granted. (Dkt. 181-3). The doctrine of res judicata "provides that a final judgment on the merits of an action precludes the 'parties or their privies from relitigating issues that were or could have been raised' in a prior action. *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995) (citation omitted). Thus, plaintiff's "name" allegations, even if pled, would be barred by res judicata. Finally, even if plaintiff were allowed to make those allegations, plaintiff fails to show how those allegations would defeat defendants' immunity arguments because the "name" allegations all pertain to, and arose out of, the state court criminal proceeding against plaintiff, and, as shown below, defendants Biernat and DeMuynck are absolutely immune from liability on such claims.

Therefore, plaintiff's complaint fails to state a claim against defendants Biernat and DeMuynck, and it should be dismissed with prejudice as to those defendants.

### b.    Defendants Biernat and DeMuynck are absolutely immune from personal liability for damages

Even if plaintiff's Complaint could be construed as adequately pleading a claim against defendants Biernat and DeMuynck, plaintiff's complaint against those defendants is also subject to dismissal because they are entitled to absolute immunity.  It is well-settled law that judges enjoy absolute immunity from federal suits for damages arising from acts they performed in their judicial capacities. *Forrester v. White*, 484 U.S. 219 (1988); *Stern v. Mascio*, 262 F.3d 600, 606-07 (6th Cir. 2001).  Judicial immunity is abrogated only when a judge is not acting in a judicial capacity, or when the judge takes action in the absence of jurisdiction, which is not the case here.  *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991).  Whether an action is "judicial" depends on the "'nature' and 'function' of the act, not the 'act itself.'"  *Id.* at 13 (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)).  This functional analysis generally turns on two factors set forth by the Supreme Court in *Stump*.  First, rather than looking at a particular act in isolation, courts should "look to the particular act's relation to a general function normally performed by a judge."  *Mireles*, 502 U.S. at 13.  Second, courts must assess whether the parties dealt with the judge in his or her judicial capacity.  *Stump*, 435

36

U.S. at 362.  An act "'does not become less judicial by virtue of an allegation of malice or corruption of motive." *Sparks v. Character and Fitness Comm. of Ky.*, 859 F.2d 428, 432 (6th Cir. 1988) (quoting *Forrester*, 484 U.S. at 227).

Although such immunity does not extend to "nonjudicial actions" or actions "taken in the complete absence of all jurisdiction," *Stern*, 262 F.3d at 607 (internal quotation marks and citation omitted), nothing in plaintiff's complaint suggests that his claims against Judge Biernat fit within either of these two limited exceptions to absolute judicial immunity.  Rather, the complaint's conclusory allegations concerning Judge Biernat "rest solely and exclusively upon actions [he] allegedly took and rulings [he] issued in the course of the state court proceeding, acts that plainly were undertaken in a judicial capacity."  *See Nasser El v. Smith*, 2012 WL 313985, at *2 (E.D. Mich. Jan. 31, 2012).  Thus, judicial immunity bars the plaintiff's claims against Judge Biernat and plaintiff's claims for damages against Judge Biernat should be dismissed.

Similarly, prosecutors enjoy absolute immunity for all acts undertaken in preparation for the initiation of judicial proceedings or for trial or which occur in the course of their role as advocate for the state.  *See Buckley v. Fitzsimmons*, 509 U.S. 259 (1993).  "Absolute prosecutorial immunity, like absolute judicial immunity, is a common law principle that shields a prosecutor from § 1983 liability."  *Cooper v. Parrish*, 203 F.3d 937, 946 (6th Cir. 2000).  A prosecutor has

absolute immunity for all acts "intimately associated with the judicial phase of the

criminal process," such as "initiating a prosecution and ... presenting the State's

case." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). The Sixth Circuit has held:

> Those acts that occur in the course of the prosecutor's
> role as an advocate for the state, e.g., acts taken to
> prepare for the initiation of judicial proceedings or to
> prepare for trial, are protected by absolute immunity. By
> contrast, a prosecutor who "performs the investigative
> functions normally performed by a detective or police
> officer" such as "searching for the clues and
> corroboration that might give him probable cause to
> recommend that a suspect be arrested" is entitled only at
> most to qualified immunity.

*Cooper*, 203 F.3d at 947 (internal citations omitted).  As with judicial immunity,

the motives of the prosecutor are irrelevant for purposes of immunity.  *Eldridge v.

Gibson*, 332 F.3d 1019, 1021 (6th Cir. 2003).  Plaintiff's claims against defendant

DeMuynck appear to be grounded in her conduct during his criminal prosecution

and thus, are barred by prosecutorial immunity.

###   c.     Plaintiff's claims against defendants Biernat and DeMuynck in their official capacity are barred

"In an official capacity action, the plaintiff seeks damages not from the

individual officer, but from the entity for which the officer is an agent."  *Pusey v.

City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993).  The Eleventh Amendment

to the United States Constitution bars § 1983 claims against state officials sued in

their official capacities for damages.  *Cady v. Arenac Cnty.*, 574 F.3d 334, 342-43

(6th Cir. 2009).  The Sixth Circuit has held that "there can be no doubt that all of

Michigan's courts, including those trial-level courts funded by local funding unit,

are part of one, unified judicial branch *of the state*."  *Pucci v. Nineteenth Dist.*

*Court*, 628 F.3d 752, 763 (6th Cir. 2010) (emphasis added).  "Consequently, just as

the Michigan Supreme Court is an arm of the state, so [the Circuit] Court."  *Id.*; *see*

*also Anger v. Gingell*, 2013 WL 1774640, at *2 (E.D. Mich. Apr. 25, 2013) ("The

Oakland County Circuit Court is part of the judicial branch of state government,

and its employees are state employees.").  Such sovereign immunity extends to

judges and prosecutors in the Michigan courts who are sued in their official

capacities.  *See Pucci*, 628 F.3d at 764; *Brooks v. Worthy*, 2011 WL 1748544, at *4

(E.D. Mich. May 2, 2011).  Thus, in addition to their absolute immunity,

defendants Biernat and DeMuynck are entitled to sovereign immunity from all

federal claims against them in their official capacities seeking damages and

retrospective relief, and plaintiff's claims against them in their official capacities

for damages should be dismissed for this reason as well.[6]

_____

[6] The undersigned further notes that while the Eleventh Amendment does not prohibit
suits against state officers for prospective injunctive or declaratory relief, *Edelman v. Jordan*,
415 U.S. 651, 677 (1974), along with judicial immunity and the shielding provided to state
actors by the Eleventh Amendment, judges have received additional protection from Congress.
In 1996, 42 U.S.C. § 1983 was amended to prohibit the granting of injunctive relief against
judicial officers for acts taken in their judicial capacities, except in situations in which a
declaratory decree has been violated or declaratory relief is unavailable.  42 U.S.C. § 1983
(providing that "in any action brought against a judicial officer for an act or omission taken in
such officer's judicial capacity, *injunctive relief shall not be granted* unless a declaratory decree
was violated or declaratory relief was unavailable"); *Kircher v. City of Ypsilanti*, 458 F. Supp.2d
439, 447-48 (E.D. Mich. 2006) (where plaintiff had not alleged that judicial defendants violated

### 3.    Defendant Kutell

Plaintiff alleges that defendant Sergeant Kutell was one of several deputies "collectively involved" with several alleged incidents on May 28, 2010.  (Dkt. 1). Plaintiff proceeds to further describe these claimed incident in subparts (a) through (d) to paragraph 28 of his Complaint.  (*Id.*)  Plaintiff alleges specific actions allegedly taken by defendants Furno, Campau, Masakowski and Mazzarelli, but makes no mention of defendant Kutell or of any action that could be attributed to defendant Kutell.  (*Id.*).

As explained above, to state a claim under 42 U.S.C. § 1983, "a plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution."  *Iqbal*, 565 U.S. at 676.  It is well settled that "[w]here a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints."  *Potter*, 497 F.2d at 1207; *Baker*, 2013 WL 1720803, at *3 ("Where a person is named as a defendant without an allegation of specific conduct, the complaint against him is subject to dismissal,

---

a declaratory decree or that declaratory relief was unavailable, claim for injunctive relief was barred).  Thus, plaintiff's claim against defendant Biernat fails for this reason as well.

even under the liberal construction afforded to *pro se* complaints.") (citation

omitted).

Plaintiff here fails to allege that defendant Kutell was personally involved in

the alleged constitutional violations.  Failure to "allege, with particularity, facts

that demonstrate what *each* defendant did to violate the asserted constitutional

right" requires dismissal of plaintiff's complaint.  *See Marcilis v. Twp. of Redford*,

693 F.3d 589, 596-97 (6th Cir. 2012) (quoting *Lanham v. Hinson*, 529 F.3d 673,

684 (6th Cir. 2008)); *Baker*, 2013 WL 1720803, at *3.   Accordingly, plaintiff's

complaint against defendant Kutell should be dismissed with prejudice.[7]

## IV.   RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that defendant

Wroblewski's motion for summary judgment be **GRANTED**, that the defendants'

motion to dismiss claims against Hackel, Sanborn, Biernat, DeMuynck and Kutell

---

[7] Plaintiff asserts in response to both the motion for summary judgment and the motion to dismiss that he should be permitted to file an amended complaint.  That request should be denied.  The Local Rules provide that a party who moves to amend a pleading shall attach the proposed amended pleading to the motion.  E.D. Mich. L.R. 15.1.  Rule 5(e) of the E.D. Mich. Elec. Filing Policies and Proc. provides that "a response or reply to a motion must not be combined with a counter-motion."  Plaintiff's request for leave to amend does not comply with these rules.  Further, as explained *supra*, plaintiff previously filed a motion to amend his complaint, which was denied because plaintiff's motion was unduly delayed, plaintiff provided no explanation as to what newly discovered information prompted the motion to amend, plaintiff had not established that he acted with due diligence in seeking to amend the complaint, and defendants would suffer prejudice in the form of additional discovery, expense and delay.  (Dkt. 161).  Plaintiff's request to amend his complaint now should be denied for those same reasons, and for the reasons set forth in this Report and Recommendation.

be **GRANTED**, and that plaintiff's complaint against these defendants be

**DISMISSED** with prejudice.

The parties to this action may object to and seek review of this Report and
Recommendation, but are required to file any objections within 14 days of service,
as provided for in Federal Rule of Civil Procedure 72(b)(2).  Failure to file specific
objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474
U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th
Cir. 1981).  Filing objections that raise some issues but fail to raise others with
specificity will not preserve all the objections a party might have to this Report and
Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401
(6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370,
1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be
served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"
etc.  Any objection must recite precisely the provision of this Report and
Recommendation to which it pertains.  Not later than 14 days after service of an
objection, the opposing party may file a concise response proportionate to the
objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Administrative Order
09-AO-042.  The response must specifically address each issue raised in the
objections, in the same order, and labeled as "Response to Objection No. 1,"

42

"Response to Objection No. 2," etc. If the Court determines that any objections are

without merit, it may rule without awaiting the response.

Date: May 7, 2013                                    s/Michael Hluchaniuk
                                                     Michael Hluchaniuk
                                                     United States Magistrate Judge




**CERTIFICATE OF SERVICE**

        I certify that on May 7, 2013, I electronically filed the foregoing paper with
the Clerk of the Court using the ECF system which will send electronic notification
to the following: Timothy S. Ferrand, Randall A. Juip, Lauri S. Kotch, Frank J.
Krycia, James S. Meyerand, Brian J. Richtarcik, and Jason J. Thomas, and I certify
that I have mailed by United States Postal Service the paper to the following non-
ECF participant(s) Joseph Corsetti, ID# 140643, SAGINAW CORRECTIONAL
FACILITY, 9625 Pierce Road, Freeland, MI 48623.

                                                     s/Tammy Hallwood
                                                     Case Manager
                                                     (810) 341-7887
                                                     tammy_hallwood@mied.uscourts.gov